**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RANDOLPH JONES,<br><br>Plaintiff,<br><br>- against -<br><br>ONONDAGA COUNTY RESOURCE RECOVERY AGENCY; KEVIN SPILLANE, in his individual capacity; and DAN HAAS, in his individual capacity,<br><br>Defendants. | 5:26-cv-2354 (AJB/ML)<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Randolph Jones, by and through undersigned counsel, for his Complaint against Defendants Onondaga County Resource Recovery Agency ("OCRRA" or the "Agency"), Kevin Spillane, and Dan Haas, alleges as follows:

## NATURE OF THE ACTION

1. This is an action for race discrimination, sexual harassment, hostile work environment, and retaliation in employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981, as enforced through 42 U.S.C. § 1983; the First Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983; the New York State Human

Rights Law, N.Y. Executive Law § 290 et seq. (“NYSHRL”); and New York Civil Service Law § 75-b.

2. Plaintiff, an African American man, worked for OCRRA and its predecessor for thirty-eight years. After he complained of racial harassment, filed charges with the New York State Division of Human Rights (“DHR”), reported a coworker’s sexually explicit harassment, and reported to the New York State Department of Environmental Conservation (“DEC”) that OCRRA was shredding and incinerating waste tires, Defendants subjected him to an escalating campaign of investigations, discipline, suspensions, and administrative leave, and then terminated his employment.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over Plaintiff’s federal claims under 28 U.S.C. §§ 1331 and 1343, and under 42 U.S.C. § 2000e-5(f)(3).

4. This Court has supplemental jurisdiction over Plaintiff’s state law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in the Northern District of New York under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because the employment practices at

issue occurred in Onondaga County, New York, within this District, where Plaintiff worked and would have continued working absent the challenged discharge.

## ADMINISTRATIVE PREREQUISITES

6. On or about August 12, 2024, Plaintiff filed a verified complaint with the DHR against OCRRA alleging discrimination because of race and color and retaliation, DHR Case No. 10238909, which was dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") under Federal Charge No. 16GC405925.

7. On June 3, 2025, that complaint was amended to add allegations that Plaintiff was subjected to sexual harassment because of his sex. On August 27, 2025, the DHR found probable cause to believe that OCRRA subjected Plaintiff to sexual harassment and retaliation.

8. On or about February 21, 2025, Plaintiff filed a further DHR complaint against OCRRA, DHR Case No. 10245922, which was dual-filed with the EEOC under Charge No. 16GC503269. That complaint alleged unlawful retaliation and a hostile work environment.

9. Plaintiff also submitted a verified charge to the EEOC, signed August 7, 2026, alleging race and color discrimination and retaliation by OCRRA, which the charge identified as Onondaga County Recycling and Recovery Agency. The EEOC processed that matter under Charge No. 525-2026-02767.

10. On August 30, 2026, the EEOC issued a Determination and Notice of Rights in Charge No. 525-2026-02767, dismissing that charge and notifying Plaintiff of his right to sue. This action is commenced within ninety days of receipt of that Notice.

11. Plaintiff's claims under 42 U.S.C. § 1983 do not require administrative exhaustion. Plaintiff pleads the state-law counts in the alternative to the extent judicial relief is available under their governing statutes.

## PARTIES

12. Plaintiff Randolph Jones is an African American man residing in Syracuse, Onondaga County, New York.

13. Defendant OCRRA is a public benefit corporation organized under New York Public Authorities Law § 2045-c, engaged primarily in waste management and recycling operations. OCRRA maintains its principal offices at 100 Elwood Davis Road, North Syracuse, New York 13212. At all relevant times, OCRRA was an "employer" within the meaning of Title VII and the NYSHRL, a "public employer" within the meaning of Civil Service Law § 75-b, and a person acting under color of state law for purposes of 42 U.S.C. § 1983.

14. Defendant Kevin Spillane was at all relevant times OCRRA's Executive Director. Spillane made the determination to terminate Plaintiff's employment. Upon information and belief, Spillane possessed final policymaking

authority for OCRRA with respect to the discipline and discharge of employees. He is sued in his individual capacity.

15. Defendant Dan Haas was at all relevant times OCRRA's Director of Transfer Operations. Haas began his employment with OCRRA on February 28, 2024. Haas issued and signed discipline against Plaintiff, including the Notice of Discipline seeking his termination. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Thirty-Eight Years of Service

16. OCRRA's predecessor hired Plaintiff on April 13, 1987.

17. Plaintiff was promoted to Motor Equipment Operator III in 2012 and to Crew Leader in 2017, and he maintained perfect attendance for over fifteen years.

18. At all material times, Plaintiff worked as a Crew Leader at OCRRA's Rock Cut Road transfer station in Jamesville, New York, where he coordinated and assigned the day-to-day work of bargaining unit employees.

### B. Racial Harassment and Plaintiff's 2023 Complaints

19. On August 2, 2023, Plaintiff filed an internal harassment complaint against Plant Supervisor Jeffrey Sparks, a white supervisor, arising from an incident on July 28, 2023.

20. On August 30, 2023, when Deputy Director Mike Mokrzycki and Personnel Administrator Michca Ballard-Fortin told Plaintiff they did not feel a need

to interview all witnesses, Plaintiff informed them of his intent to file complaints with the DHR and the EEOC, and Ballard-Fortin responded, "Go right ahead."

21. On September 11, 2023, Plaintiff appealed the outcome of OCRRA's internal investigation and separately complained that Mokrzycki and Ballard-Fortin's investigation was itself racially biased.

22. On October 16, 2023, Plaintiff filed DHR Case No. 10229933 against OCRRA.

23. In its November 16, 2023 submission to the DHR, OCRRA, through counsel, acknowledged that Sparks's personnel file reflected a past violation of the Agency's Harassment-Free Workplace Policy for making racist comments and that Sparks had an extensive history of singling out and targeting Plaintiff.

24. In a November 2023 third-party investigation report, Spillane stated that Sparks targeted Plaintiff more than any other employee and that Spillane had been aware of that pattern for years. On November 14, 2023, Spillane denied Plaintiff's appeal and concluded that the July 28, 2023 incident and the initial investigation did not violate the Agency's harassment policy.

25. In December 2023, Plaintiff told Spillane that he had been negligent in failing to inform African American employees of Sparks's racially charged comments toward them. After that conversation, Spillane told Plaintiff that he did not need him to work late and did not want him to drive.

**C. The Escalating Investigations and Discipline in 2024**

26. On February 27, 2024, Spillane notified Plaintiff that the Agency was investigating an incident that allegedly occurred on or about February 13, 2024, at the Rock Cut Road site. Spillane hand-delivered a second letter on March 8, 2024, directing Plaintiff to appear at the Agency's main offices.

27. On March 11, 2024, Plaintiff filed an internal complaint with the Agency board, through the ethics officer, describing Spillane's retaliation and hostile treatment.

28. On May 7, 2024, Haas issued Plaintiff a verbal warning concerning alleged failures to wear a seat belt. On May 9, 2024, Haas issued a written warning concerning a further alleged seat-belt violation. The May 9 warning advised Plaintiff that a third violation of any work rule within twelve months would subject him to discharge. Plaintiff was then performing driving duties outside his job description to help the Agency maintain the flow of material to the landfill.

29. On May 14, 2024, Mokrzycki directed Plaintiff to complete a drug test the same day the memorandum was delivered to him.

**D. The May 22, 2024 Sexual Harassment**

30. On May 22, 2024, employee Gary McWilliams, whom Plaintiff supervised, grabbed his crotch, thrust his hips at Plaintiff, and told Plaintiff to "suck my mother f*cking dick," in the presence of coworkers and customers.

31. Plaintiff reported the incident to his supervisors on May 23, 2024, consistent with OCRRA's Sexual Harassment Prevention Training policy. On June 12, 2024, Plaintiff submitted a written harassment complaint identifying McWilliams and Ballard-Fortin.

32. Multiple witnesses interviewed in OCRRA's third-party investigation, including McWilliams himself, confirmed that McWilliams made the statement. OCRRA nonetheless concluded there was no indication the conduct was intended as a true sexual advance and responded with a non-disciplinary job discussion and an Employee Assistance Program referral. Plaintiff alleges that this response failed to adequately address the harassment he reported.

**E. Continued Retaliation Following Plaintiff's Complaints**

33. On June 18, 2024, OCRRA notified Plaintiff that its outside investigator had not substantiated his complaint against Spillane.

34. On June 25, 2024, more than four months after the alleged February 13, 2024 incident, OCRRA imposed a written warning and a five-day unpaid suspension on Plaintiff for alleged "junking." The union grieved the discipline, noting that it was imposed more than ninety business days after the incident, that the Agency had not shared its investigation with Plaintiff or the union, and that Plaintiff was being targeted.

35. OCRRA told Plaintiff it had "lost" his leave requests for June 2024 and later generated leave slips bearing "NA" in place of his signature.

36. On June 27, 2024, two days after imposing the five-day suspension, OCRRA notified Plaintiff that it was investigating a customer complaint about his conduct on June 19, 2024. On July 30, 2024, Haas disciplined Plaintiff for allegedly sleeping in a loader on June 19, 2024. Plaintiff denied that he was sleeping. The union again grieved, stating that OCRRA had not provided evidence to support the charge and that Plaintiff was being targeted.

37. On July 15, 2024, Spillane denied Plaintiff's request for a copy of the third-party investigation report concerning his March 11, 2024 complaint.

38. On August 12, 2024, Plaintiff filed DHR Case No. 10238909.

**F. Plaintiff's Whistleblower Disclosures to the DEC**

39. In the summer of 2024, Plaintiff learned that employees at Rock Cut Road had been instructed to shred waste tires with mattresses and send them to be incinerated. Plaintiff believed the practice was illegal.

40. Plaintiff raised his concern with Assistant Director of Transfer Operations Andy Semabia, who told him the Agency's engineer said the Agency had the proper permit. Plaintiff also raised his concern with counsel for his union.

41. In November 2024, Plaintiff reported the tire shredding to the DEC, and on or about December 3, 2024, he reported it to Maria Cirino, the Agency's ethics

officer. Plaintiff made these disclosures as a citizen concerned about the environmental and public health effects of burning waste tires, a matter of public concern, and not as part of his ordinary job duties.

42. OCRRA's Personnel Administrator learned of Plaintiff's report to the ethics officer on December 9 or 10, 2024. In December 2024, Spillane told Haas that tires were being shredded at Rock Cut Road and that the practice needed to stop.

43. On December 11, 2024, a DEC inspector inspected the Rock Cut Road facility. Haas believed Plaintiff "tried to get the Agency in trouble" by reporting the matter to the DEC.

44. On June 11, 2025, the DEC issued OCRRA a Notice of Violation confirming that OCRRA violated its permit by burning shredded waste tires and that a complaint about the conduct had been received in November 2024.

## G. Administrative Leave and Termination

45. On January 21, 2025, OCRRA disciplined Plaintiff for a 43-minute breakfast stop on December 21, 2024. OCRRA imposed a greater penalty on Plaintiff than on the non-Black employees who took the same break.

46. In early 2025, Haas told Plaintiff's coworkers that Plaintiff could not make decisions and that other employees need not listen to him. In early February 2025, OCRRA placed Plaintiff on administrative leave. Plaintiff alleges that this treatment stripped him of his crew-leadership authority and removed him from the

workplace. In Plaintiff's thirty-eight years of employment, this had never been done to him, and Plaintiff is aware of no policy authorizing it.

47. On April 3, 2025, OCRRA served Plaintiff with a Notice of Discipline seeking his discharge. The Notice was signed by Haas.

48. Charge I of the Notice accused Plaintiff of directing a coworker to shred tires on December 11, 2024, and expressly relied on Plaintiff's December 3, 2024 signed statement to the Agency's ethics officer that tire shredding was a violation that had been reported to the DEC. Plaintiff denies directing anyone to shred tires.

49. The coworker who accused Plaintiff, Don Peck, who is white, was later overheard saying, "I'm not going to let these n*gg**s win." Walter Lindsey, who was accused alongside Plaintiff, was not disciplined.

50. Charge III of the Notice relied on the very disciplinary actions Plaintiff had received after his protected complaints: the May 7 and May 9, 2024 seat belt warnings, the June 25, 2024 junking suspension, the July 30, 2024 sleeping discipline, and the January 21, 2025 breakfast discipline.

51. By Notice of Decision dated May 1, 2025, following a hearing on April 24, 2025, OCRRA terminated Plaintiff's employment. In upholding the termination, Spillane considered Plaintiff's insistence that the discipline was discriminatory.

52. At termination, Plaintiff earned $32.43 per hour.

53. On May 19, 2026, an arbitrator issued an Opinion and Award denying the union's grievance and sustaining Plaintiff's discharge under the collective bargaining agreement. Plaintiff seeks relief in this action for the violations of his federal and state rights alleged below.

54. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and damage to his reputation.

55. Defendants Spillane and Haas acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights.

**COUNT I**
**Race Discrimination in Violation of Title VII, 42 U.S.C. § 2000e-2(a)**
**(Against Defendant OCRRA)**

56. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

57. Plaintiff is African American and Black and belongs to protected racial and color groups. OCRRA employed him as a Motor Equipment Operator III and Crew Leader.

58. Plaintiff was qualified for those positions through his experience, promotions, and performance of equipment-operation and crew-leadership duties. He worked for OCRRA and its predecessor for approximately thirty-eight years and maintained the attendance record alleged above.

59. OCRRA was an employer covered by Title VII. Upon information and belief, it employed at least fifteen employees for each working day in at least twenty calendar weeks in the relevant calendar years.

60. OCRRA subjected Plaintiff to unpaid suspensions in June and July 2024, a greater disciplinary penalty for the December 2024 breakfast stop, removal of his decision-making authority, administrative leave in early February 2025, and termination in May 2025.

61. These actions harmed identifiable terms and conditions of Plaintiff's employment: the unpaid suspensions reduced his earnings, the withdrawal of authority diminished his crew-leadership responsibilities, administrative leave removed him from the workplace, and discharge ended his employment and benefits.

62. OCRRA imposed a greater penalty on Plaintiff than on non-Black employees who took the same December 21, 2024 breakfast stop. Those employees were involved in the same incident that OCRRA used to discipline Plaintiff on January 21, 2025.

63. Gary McWilliams, a White Motor Equipment Operator II, received more favorable disciplinary treatment. McWilliams was written up for work-rule violations in June and August 2024 but received no disciplinary penalties. OCRRA addressed McWilliams's May 22, 2024 conduct with a non-disciplinary discussion and an Employee Assistance Program referral.

64. White employees whom Plaintiff accused of discrimination or harassment, including Sparks, McWilliams, Mokrzycki, Ballard-Fortin, Spillane, and Haas, remained at work during the investigations. OCRRA placed Plaintiff on administrative leave while investigating accusations against him.

65. The inference of racial discrimination is further supported by OCRRA's acknowledged history of Sparks's racist comments and targeting of Plaintiff, Spillane's knowledge of that history, and reliance on accusations from Peck, the White coworker whose racial statement is alleged in paragraph 49.

66. Plaintiff's race was a motivating factor in the challenged employment decisions. The selective penalties, different treatment during investigations, known racial targeting, and disputed accusations support Plaintiff's allegation that OCRRA's stated reasons were pretexts for discrimination.

67. As a direct and proximate result, Plaintiff suffered lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and the other injuries alleged above.

**COUNT II**
**Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a)**
**(Against Defendant OCRRA)**

68. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

69. Plaintiff engaged in protected opposition by complaining of racial harassment in August and September 2023, objecting directly to Spillane's handling of racist conduct in December 2023, complaining to the Agency board through the ethics officer in March 2024, and reporting McWilliams's conduct in May and June 2024.

70. Plaintiff also engaged in protected participation by filing and pursuing the DHR discrimination complaints identified above, including the October 2023, August 2024, and February 2025 proceedings.

71. Plaintiff reasonably and in good faith believed that the conduct he opposed was unlawful. His belief rested on his experiences, the documented racist comments and targeting, the different treatment of non-Black employees, and the sexually explicit conduct directed at him.

72. OCRRA knew of Plaintiff's protected activities. Its managers received his internal reports, its personnel administrator responded to his announced intention to file with the DHR and EEOC, its counsel answered the DHR allegations, and Spillane personally addressed the complaints and appeals concerning his own conduct.

73. OCRRA subjected Plaintiff to materially adverse treatment, including restrictions on his late work and driving duties, disciplinary warnings, unpaid suspensions, withdrawal of his crew-leadership authority, administrative leave, and

discharge. These actions, considered individually where sufficient and in their cumulative context, would dissuade a reasonable employee from making or supporting a discrimination complaint.

74. The sequence supports retaliatory causation. Spillane restricted Plaintiff's late work and driving after their December 2023 conversation; additional warnings and discipline followed the March 2024 board complaint and May and June 2024 harassment reports; and withdrawal of authority, leave, and discharge followed Plaintiff's continued pursuit of his discrimination complaints.

75. Spillane expressly considered Plaintiff's insistence that the discipline was discriminatory when upholding termination. Plaintiff alleges that Spillane treated his opposition to discrimination as an adverse consideration in deciding to end his employment.

76. OCRRA then used the disciplinary record accumulated after Plaintiff's protected complaints as part of the basis for discharge. The unpaid discipline challenged through grievances, disparate penalty for the same breakfast stop, and disputed tire-shredding accusation further support Plaintiff's allegation of retaliatory pretext.

77. Plaintiff's protected opposition and participation were but-for causes of the challenged retaliatory actions. Absent the protected activities, OCRRA would not have imposed the same adverse treatment alleged in this count.

78. As a direct and proximate result, Plaintiff suffered lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and the other injuries alleged above.

**COUNT III**
**Hostile Work Environment Because of Race and Sex in Violation of Title VII**
**(Against Defendant OCRRA)**

79. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

80. Plaintiff is a Black man who was employed by OCRRA. He was subjected to unwelcome conduct that he alleges was directed at him because of his race and sex.

81. The racial component includes Sparks's documented racist comments and repeated targeting of Plaintiff, management's knowledge that Sparks targeted Plaintiff more than other employees, and Peck's racial statement concerning Black employees in the context of the accusations used against Plaintiff.

82. The sex-based component includes the May 22, 2024 incident in which McWilliams grabbed his own crotch, thrust his hips toward Plaintiff, and directed a sexually explicit demand at him in front of coworkers and customers. Plaintiff alleges that this conduct subjected him to sex-based humiliation at his workplace.

83. Plaintiff did not welcome or consent to the harassment. He repeatedly reported the racial treatment, reported the May 22 incident to supervisors the next

day, and submitted a written harassment complaint on June 12, 2024. He experienced the workplace as humiliating, hostile, and abusive.

84. Plaintiff alleges that the racial conduct, considered in its full context and over the course described above, was sufficiently severe or pervasive to alter his working conditions. It involved racial language, repeated targeting known to management, and accusations and treatment affecting his ability to perform his work free from racial hostility.

85. Plaintiff alleges that the sexually explicit demand and accompanying genital gesture were severe in their context: they were directed at him publicly by an employee he supervised, in the presence of coworkers and customers, and humiliated him in the performance of his workplace role.

86. OCRRA had actual notice of the alleged harassment through Plaintiff's reports, its internal and outside investigations, the DHR proceedings, and Spillane's acknowledged knowledge of Sparks's conduct. Its response to McWilliams included a non-disciplinary discussion and an Employee Assistance Program referral; Plaintiff alleges that the response failed to adequately address the harassment he reported.

87. OCRRA failed to take prompt and effective corrective measures sufficient to end the alleged hostile environment. Its management officials also participated in the allegedly discriminatory targeting and employment treatment

described above. Plaintiff attributes the hostile environment to OCRRA on the basis of that knowledge, response, and participation.

88. The alleged environment was subjectively offensive to Plaintiff and objectively hostile or abusive in the circumstances described. It caused humiliation, emotional distress, and injury to the terms and conditions of his employment.

**COUNT IV**
**Race Discrimination and Hostile Work Environment in Violation of 42 U.S.C. § 1981, Enforced Through 42 U.S.C. § 1983**
**(Against All Defendants)**

89. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

90. Plaintiff is Black and was qualified for his equipment-operator and crew-leader positions. His employment relationship with OCRRA, including its collective bargaining agreement, entitled him to the same rights as White employees in the performance, terms, conditions, benefits, and termination of employment.

91. OCRRA is a public benefit corporation. Spillane and Haas acted under color of New York law when exercising the Agency's supervisory and disciplinary powers over Plaintiff.

92. Defendants intentionally subjected Plaintiff to disparate discipline, loss of authority, removal from the workplace, discharge, and the racially hostile treatment described above. The racial basis is supported by the same-incident

breakfast comparators, McWilliams's more favorable disciplinary treatment, known racial targeting, and Peck's racial statement.

93. Haas personally issued the May 2024 warnings and July 2024 sleeping discipline, told coworkers that Plaintiff could no longer make decisions, and signed the April 3, 2025 notice seeking Plaintiff's discharge. Plaintiff alleges that Haas used those exercises of disciplinary authority to impose the unequal treatment at issue.

94. Spillane personally knew of the documented racial targeting, addressed and denied Plaintiff's complaints and appeal, restricted his late work and driving after their December 2023 discussion, and decided to terminate his employment. Plaintiff alleges intentional discrimination arising from Spillane's own decisions and use of the challenged disciplinary record.

95. Plaintiff's race was a but-for cause of the discriminatory treatment imposed by each participating Defendant. Plaintiff alleges that he would have received more favorable treatment in the challenged decisions had he been White, as reflected in the comparator and circumstantial allegations above.

96. Upon information and belief, Spillane possessed final policymaking authority for OCRRA in employee discipline and discharge, as alleged in paragraph 14. In exercising that authority, he issued the determination following Plaintiff's pretermination hearing, and OCRRA implemented his decision ending Plaintiff's employment.

97. Plaintiff also alleges an OCRRA custom of tolerating racial targeting and unequal discipline. The supporting circumstances include the repeated targeting acknowledged by Spillane over a period of years, management's knowledge through complaints and investigations, and the continuation of discriminatory treatment alleged here despite that knowledge.

98. The final disciplinary decision and the alleged custom were moving forces behind the deprivation of Plaintiff's equal employment rights. Plaintiff seeks relief against OCRRA for its own policy or custom and against Spillane and Haas for their own intentional participation.

99. The racially hostile conduct alleged in this count was unwelcome, objectively severe or pervasive in context, and subjectively abusive to Plaintiff. Each individual Defendant is liable to the extent his own intentional conduct caused or perpetuated that race-based deprivation.

100. As a direct and proximate result, Plaintiff suffered lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and the other injuries alleged above. Spillane and Haas acted with the intentional and reckless indifference alleged in paragraph 55, supporting punitive damages against them individually.

**COUNT V**
**Retaliation in Violation of 42 U.S.C. § 1981, Enforced Through 42 U.S.C. §**

**1983**
**(Against All Defendants)**

101. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

102. Plaintiff asserted his right to a racially equal employment relationship by complaining internally and to the DHR and EEOC about race discrimination. His opposition included the complaints involving Sparks, his objections to Spillane's response to racist conduct, and his challenge to discriminatory discipline.

103. Plaintiff reasonably and in good faith believed that the racial practices he challenged were unlawful. The documented racist comments, acknowledged targeting, and unequal disciplinary treatment supplied a factual basis for that belief.

104. Spillane knew of the protected activities through Plaintiff's direct complaints, the appeal Spillane decided, the board complaint concerning Spillane, and his consideration of Plaintiff's assertion of discrimination during the discharge process.

105. Plaintiff complained of discrimination involving Haas in 2024. Upon information and belief, Haas knew of that complaint and Plaintiff's challenges to discriminatory discipline. That inference rests on the complaint concerning Haas himself, his involvement in the disputed discipline, and his subsequent withdrawal of Plaintiff's authority and execution of the discharge charges.

106. Acting under color of state law, Haas personally carried out the disciplinary and authority-removal actions described above and signed the notice seeking discharge. Spillane personally imposed work restrictions and made the termination decision. Plaintiff alleges that each acted because of Plaintiff's protected race-discrimination complaints.

107. The challenged actions materially impaired Plaintiff's employment and would deter a reasonable employee from seeking racially equal treatment. The restrictions, unpaid discipline, removal of authority, administrative leave, and discharge affected his earnings, responsibilities, and continued employment.

108. Retaliatory causation is supported by the sequence of complaints and adverse actions, the accumulation and use of contested discipline, and Spillane's express consideration of Plaintiff's insistence that the discipline was discriminatory. Plaintiff's protected activity was a but-for cause of the treatment each Defendant personally imposed.

109. OCRRA is liable for the retaliatory termination made through Spillane's final policymaking authority described in paragraph 96. That official decision was a moving force behind the deprivation of Plaintiff's right to assert and enjoy a racially equal employment relationship.

110. As a direct and proximate result, Plaintiff suffered lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and the

other injuries alleged above. The intentional and recklessly indifferent conduct of Spillane and Haas also supports punitive damages against them individually.

**COUNT VI**
**First Amendment Retaliation, 42 U.S.C. § 1983**
**(Against All Defendants)**

111. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

112. Plaintiff spoke about the shredding and incineration of waste tires and the resulting environmental and public-health concerns. He raised the issue with his union, reported it to the DEC in November 2024, and made a further report to OCRRA's ethics officer on or about December 3, 2024.

113. The reports addressed compliance with environmental requirements by a public agency and risks extending beyond Plaintiff's own employment. They concerned matters of public importance to the surrounding community.

114. Plaintiff made the disclosures as a citizen, as alleged in paragraph 41. His ordinary duties involved operating equipment and coordinating bargaining-unit employees' work; the reports challenging the Agency's environmental practices were outside those ordinary duties.

115. Defendants knew of the disclosures. OCRRA's personnel administrator learned of the ethics report in December 2024, Spillane directed Haas to stop the tire-shredding practice, Haas expressed the view that Plaintiff had tried to get the

Agency in trouble through his report to the DEC, and the discharge notice expressly referenced Plaintiff's report.

116. After the disclosures, Defendants subjected Plaintiff to the January 2025 discipline, withdrawal of his crew-leadership authority, administrative leave, the April 3, 2025 discharge charges, and termination. These actions would deter an employee of ordinary firmness from making similar protected disclosures.

117. Haas personally removed Plaintiff's authority and signed the discharge charges. Spillane made the final termination decision. Both exercised governmental authority in taking those actions against Plaintiff.

118. The disclosures were substantial or motivating factors in those actions. Supporting circumstances include the sequence from the November and December reports to the early-2025 discipline and leave, Haas's stated objection to Plaintiff getting the Agency in trouble, and the notice's express reliance on Plaintiff's report while accusing him of directing the very practice he had challenged.

119. Plaintiff denies directing the tire shredding and alleges that Defendants used that accusation as a pretext for retaliation. Defendants would not have imposed the same challenged adverse treatment absent his protected speech.

120. OCRRA is liable through the final termination decision made by Spillane in the policymaking capacity alleged in paragraph 96. That decision was a

moving force behind the retaliatory deprivation. Spillane and Haas are liable for their own participation.

121. As a direct and proximate result, Plaintiff suffered lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and the other injuries alleged above. The individual Defendants' intentional and recklessly indifferent conduct supports punitive damages against them individually.

**COUNT VII**
**Discrimination and Harassment in Violation of the NYSHRL, N.Y. Exec. Law § 296**
**(Against All Defendants)**

122. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein. This count seeks relief for unlawful practices to the extent a civil action is available under N.Y. Executive Law § 297(9).

123. Plaintiff is a Black man whose race, color, and sex are protected by the NYSHRL. OCRRA employed him in New York, and he was qualified for his equipment-operator and crew-leader work through his lengthy experience and performance of those duties.

124. OCRRA discriminated against Plaintiff because of race and color in imposing unpaid discipline, a greater penalty for the same breakfast stop, loss of decision-making authority, administrative leave, and discharge. These actions deprived him of earnings, responsibilities, and continued employment.

125. The same-incident non-Black breakfast comparators, McWilliams's more favorable disciplinary treatment, the White employees who remained at work during investigations, the history of racial targeting known to management, and Peck's racial statement support the discriminatory inference.

126. OCRRA also subjected Plaintiff to inferior terms and conditions through the alleged racial harassment and the sex-based harassment described in Count III. The sex-based theory concerns McWilliams's May 22, 2024 sexually explicit demand and genital gesture directed at Plaintiff before coworkers and customers.

127. Plaintiff experienced the conduct as unwelcome and humiliating and repeatedly sought corrective action. The alleged race- and sex-based treatment, considered in context, exceeded petty slights or trivial inconveniences and impaired his ability to work in an environment free from discriminatory harassment.

128. OCRRA knew of the alleged conduct through Plaintiff's reports and the investigations described above. Plaintiff alleges that the response failed to adequately address the harassment and that management continued the discriminatory disciplinary treatment.

129. Haas actually participated in OCRRA's discriminatory treatment by issuing discipline, stripping Plaintiff's authority, and signing the discharge charges. Spillane actually participated through his responses to the racial complaints, work

restrictions, and termination decision. Plaintiff alleges that each knowingly aided and abetted OCRRA's discrimination through his own conduct, in violation of § 296(6).

130. Race and color motivated the challenged discipline and employment decisions, and Plaintiff alleges that the harassment was imposed because of the protected characteristics identified above. The resulting discriminatory treatment violated §§ 296(1)(a) and 296(1)(h).

131. As a direct and proximate result, Plaintiff suffered lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and the other injuries alleged above.

**COUNT VIII**
**Retaliation in Violation of the NYSHRL, N.Y. Exec. Law § 296**
**(Against All Defendants)**

132. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein. This count seeks relief for unlawful practices to the extent a civil action is available under N.Y. Executive Law § 297(9).

133. Plaintiff engaged in protected activities by opposing racial discrimination and harassment internally, reporting the May 22, 2024 sexual incident, and filing and pursuing the DHR complaints. He reasonably and in good faith believed that the practices he opposed violated the NYSHRL.

134. OCRRA knew of these activities through the complaints received by management and its participation in the DHR proceedings. Spillane personally addressed Plaintiff's complaints and appeals. Upon information and belief, Haas knew of the complaint about his own conduct and the disputed discipline for the reasons stated in paragraph 105.

135. Defendants subjected Plaintiff to adverse and deterrent treatment, including work restrictions, warnings and unpaid discipline, withdrawal of authority, administrative leave, and termination. The treatment would deter a reasonable employee from opposing discrimination or participating in an agency proceeding.

136. The causal connection is supported by the sequence of complaints and adverse treatment, the reliance on the resulting contested disciplinary record, and Spillane's consideration of Plaintiff's assertion that the discipline was discriminatory. Plaintiff's protected activities motivated and were but-for causes of the retaliatory actions.

137. Haas personally participated in the challenged discipline, removal of authority, and discharge charges. Spillane personally imposed restrictions and made the discharge determination. Plaintiff alleges that each used his authority to retaliate and knowingly aided and abetted OCRRA's retaliation.

138. OCRRA's conduct violated the NYSHRL's prohibitions on retaliation. Spillane and Haas are individually liable for their own retaliation and actual participation under §§ 296(6) and 296(7).

139. As a direct and proximate result, Plaintiff suffered lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and the other injuries alleged above.

**COUNT IX**
**Retaliation in Violation of N.Y. Civil Service Law § 75-b**
**(Against Defendant OCRRA)**

140. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

141. OCRRA is a public employer, and Plaintiff held employment in its service as a public employee. The DEC and OCRRA's ethics office are governmental bodies within the meaning of § 75-b.

142. Plaintiff disclosed that OCRRA was shredding waste tires with mattresses and sending the material for incineration in violation of environmental requirements. He reported the practice to the DEC in November 2024 and to the Agency's ethics officer on or about December 3, 2024, after raising his concerns with Semabia and union counsel.

143. Plaintiff reasonably believed the information was true and described improper governmental action. His belief rested on what he learned about the

Agency's instructions and tire-disposal practices. The DEC's June 11, 2025 notice subsequently identified a permit violation involving the burning of shredded waste tires and acknowledged a complaint received in November 2024.

144. The disclosures also concerned the environmental and public-health consequences of the waste-tire practice. Plaintiff asserts protection for reporting the alleged improper governmental action and, to the extent established, the violation presenting a substantial and specific danger to public health or safety.

145. OCRRA knew of the disclosures through the personnel administrator, Spillane, Haas, and the ethics report expressly referenced in the discharge charges. Haas's statement that Plaintiff tried to get the Agency in trouble further connects the protected reporting to management's response.

146. OCRRA thereafter imposed the January 2025 discipline, removed Plaintiff's decision-making authority, placed him on administrative leave, sought his discharge in April 2025, and terminated his employment in May 2025. These were disciplinary or other adverse personnel actions affecting his compensation, assignment, responsibilities, and continued employment.

147. Plaintiff's disclosures were but-for causes of those actions. The timing, management's stated reaction, and the discharge notice's reliance on the report support that allegation. Plaintiff denies the asserted tire-shredding misconduct and

alleges that OCRRA would not have taken the same actions absent his protected disclosures.

148. Plaintiff asserts this count in the alternative under § 75-b(3)(c), to the extent the challenged personnel actions are not required to be resolved under § 75-b(3)(a) or (b). He seeks the relief available under Article 20-C of the Labor Law for actionable retaliatory personnel decisions within the applicable limitations period.

149. As a direct and proximate result, Plaintiff suffered lost wages and benefits, lost seniority and pension credit, emotional distress, humiliation, and the other injuries alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

(a) A declaration that Defendants' conduct violated Title VII, 42 U.S.C. §§ 1981 and 1983, the First Amendment, the NYSHRL, and Civil Service Law § 75-b;

(b) Reinstatement to his position with full seniority, or front pay in lieu of reinstatement;

(c) Back pay, lost benefits, and lost pension credit, with prejudgment interest;

(d) Compensatory damages for emotional distress, humiliation, and reputational harm;

(e) Punitive damages against Defendants Spillane and Haas in their individual capacities;

(f) Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1988 and 2000e-5(k), the NYSHRL, and Labor Law Article 20-C; and

(g) Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
November 13, 2026

Respectfully submitted,

/s/ Christopher H. Fitzgerald
Christopher H. Fitzgerald, Esq. (CF7339)
14 Wall Street, Suite 4C
New York, NY 10005
212-226-2275
CFitzgerald@CHFLegal.com
*Attorney for Plaintiff Randolph Jones*